COURT OF APPEALS
DECISION
DATED AND FILED

March 14, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP706-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF255

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MITCHELL LANE BUTLER,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Burnett County: MELISSIA R. MOGEN, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Mitchell Butler appeals a judgment convicting him of two counts of physical abuse of a child (intentionally causing great bodily

harm), with one of the counts as a party to the crime. Butler also appeals an order denying his postconviction motion for plea withdrawal. Butler argues that he should be permitted to withdraw his no-contest pleas because his trial attorney was constitutionally ineffective for failing to investigate Butler's alibi defense. Butler further argues that the circuit court erred by denying his postconviction motion without holding a hearing. We conclude that the court properly denied Butler's postconviction motion without a hearing. We therefore affirm.

## BACKGROUND

¶2      On December 10, 2018, the State filed a criminal complaint charging Butler with four counts of first-degree sexual assault of a child under the age of twelve, with Count 2 charged as a party to the crime. The charging period for all four counts was March 16, 2015, until June 13, 2015. Mary was the victim of Counts 1 and 2, while Sara was the victim of Counts 3 and 4.[1]

¶3      The complaint alleged that during a forensic interview in May 2018, Mary disclosed that "around Christmas" in "maybe 2015," Butler drugged her and then sexually assaulted her while she was asleep. Mary also disclosed a second incident, during which Butler forced another child to "put his dick in [Mary's] vagina." During a separate forensic interview in April 2018, Sara disclosed that Butler had touched her vagina with his hands and penis and had put his fingers and penis in her "butthole." Sara later stated during another forensic interview that

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we refer to the victims in this matter using pseudonyms. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

these events occurred during the school year, when there was no snow on the ground and it was warm outside.

¶4 On June 26, 2019, the State filed an Information that contained the same four charges as the criminal complaint. The Information, however, listed the date of each offense as January 1, 2015.

¶5 On August 28, 2019, the State filed an amended Information that eliminated Count 4—one of the charges pertaining to Sara. The amended Information listed the charging periods for the three remaining counts as: September 1, 2015, through October 1, 2015 (Count 1); June 1, 2015, through July 30, 2015 (Count 2); and August 25, 2015, through October 1, 2015 (Count 3).

¶6 On the same day that the amended Information was filed, the circuit court held a motion hearing on the admissibility of Mary's and Sara's forensic interviews. The court ruled that those interviews could be played at trial, finding that there were no signs of "deceit or falsity in either of [the] children." The court noted that while the children were not able to give "exact time[s]" when the assaults occurred, "they were able to communicate their ages, where the assaults took place, what they were wearing, what the Defendant was wearing and at least the seasons of the years in which the assaults did allegedly take place." The court stated that these "specific statements" provided "great credibility" for the victims' allegations.

¶7 The prosecutor then reminded the circuit court that the State had previously filed an Information that did not "track the dates on the Criminal Complaint." The prosecutor also informed the court that, earlier that day, the State had filed an amended Information that "took away one count" and "also changed the dates from when the events took place." The prosecutor continued, "But I

3

think you indicated that was irrespective of your decision in terms of how long it was. All of the assaults would have taken place within the fairly close proximity of time to each other."

¶8    Two days later, on August 30, 2019, the State filed a second amended Information containing four charges: first-degree sexual assault of a child under the age of twelve (Count 1); physical abuse of a child (intentionally causing great bodily harm, as a party to the crime) (Count 2); first-degree sexual assault of a child under the age of twelve (Count 3); and physical abuse of a child (intentionally causing great bodily harm) (Count 5).[2]  Mary was the victim of Counts 1 and 2, while Sara was the victim of Counts 3 and 5.  The second amended Information listed a charging period of June 1, 2015, through July 30, 2015, for Counts 1 and 2, and a charging period of August 25, 2015, through October 1, 2015, for Counts 3 and 5.  The State asserts, and Butler does not dispute, that the second amended Information "was filed to reflect the parties' negotiated plea agreement."

¶9    Four days later, on September 3, 2019, the circuit court held a plea hearing, during which Butler entered no-contest pleas to Counts 2 and 5—the two physical abuse of a child charges—pursuant to a plea agreement.  In exchange for Butler's pleas, the State agreed that Counts 1 and 3 would be dismissed and read in.  The State also agreed to recommend "no additional incarceration time."

¶10    During the plea colloquy, the circuit court inquired whether Butler was satisfied with his trial attorney's performance.  Butler stated: that his attorney

---

[2] The second amended Information did not contain a Count 4.

had represented him competently, had answered all of his questions, had reviewed his case thoroughly, had kept in communication with him, had looked for any possible defenses, and had negotiated the case to his satisfaction. Butler further stated that he was satisfied with his attorney's services and that he did not believe those services were lacking in any way.

¶11    The circuit court then asked Butler whether he remembered "what happened between June 1, 2015 and July 30, 2015 as it relates to [Mary]." Butler responded that he did not remember. Butler subsequently confirmed that he had read the criminal complaint, but he denied that the facts alleged in the probable cause section were accurate. Butler later agreed, however, that he had intentionally caused great bodily harm to Mary between June 1 and July 30, 2015, and to Sara between August 25 and October 1, 2015. *See* WIS JI—CRIMINAL 2108 (2009) (listing the elements of physical abuse of a child (intentionally causing great bodily harm)). Butler further agreed that there was sufficient evidence for the State to prove Counts 2 and 5 beyond a reasonable doubt.

¶12    The circuit court found that there was an adequate factual basis for Butler's no-contest pleas, and it further found that Butler's pleas were knowing, intelligent, and voluntary. The court therefore accepted Butler's pleas and found him guilty of Counts 2 and 5. Counts 1 and 3 were dismissed and read in.

¶13    The circuit court ultimately sentenced Butler to consecutive thirty-year terms, each comprised of twenty years of initial confinement followed by ten years of extended supervision. Butler then moved for postconviction relief, arguing that he should be permitted to withdraw his no-contest pleas because his trial attorney was constitutionally ineffective by failing to investigate Butler's alibi

defense.[3]  Specifically, the motion asserted that Butler was in custody in the Burnett County Jail from June 3, 2015, until September 24, 2015, and was in the Department of Corrections' (DOC) custody from September 24, 2015, onward.[4] The motion therefore claimed that Butler "could not possibly have committed" Count 5 because he was in custody for the entire charging period for that offense—i.e., from August 25 to October 1, 2015.

¶14    As for Count 2, which had a charging period of June 1, 2015, to July 30, 2015, Butler's postconviction motion asserted that he was in custody from June 3 onward, which left "only June 1, 2015 through Mr. Butler being taken into custody on June 3, 2015 to have committed that offense."  Butler further asserted that he was at his uncle's residence, which was not the residence where Count 2 allegedly took place, from March 2015 until he was taken into custody on June 3. Butler submitted an investigator's report in support of his claim that he was at his uncle's house on those dates.

¶15    Butler also submitted an affidavit in support of his postconviction motion, in which he averred that he told his trial attorney that he had an alibi for the charges against him, but his trial attorney failed "to follow through with investigating this information."  Because of trial counsel's failure to investigate, Butler alleged that he had "no way to defend [himself] from these allegations."

---

[3] Butler's postconviction motion also asserted that Butler should be permitted to withdraw his pleas based on newly discovered evidence and in the interest of justice.  Butler does not renew those arguments on appeal, and we therefore deem them abandoned.  *See* ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

[4] An email from the Burnett County Sheriff's Office and a printout from the DOC's website were attached to Butler's postconviction motion to support his assertions about the periods of time that he spent in custody.

Butler asserted that he chose to accept the State's plea offer because his attorney "did not follow through with [his] request to investigate the alibi defense." Butler further averred, "I would have chosen to go to trial had my attorney investigated this alibi defense."

¶16 The State asked the circuit court to deny Butler's postconviction motion without a hearing, arguing that the motion did not allege sufficient facts that, if true, would entitle Butler to relief. The court agreed and denied Butler's motion without holding a hearing. First, the court concluded that the allegations in Butler's motion, if true, were insufficient to show that his trial attorney performed deficiently by failing to investigate the alibi defense. The court reasoned that Butler had merely alleged that he told his trial attorney that he had an alibi, but Butler did not allege that he told his attorney "the names of the [alibi] witnesses, what their statements would show, where he was during the dates in question, when each would confirm he was with them and when, or how to locate the witnesses to interview them and how their statements would assist in his defense." The court stated that a lawyer "cannot be ineffective for failing to pursue something that [the] defendant knew, but did not reveal."

¶17 The circuit court also concluded that the allegations in Butler's postconviction motion were insufficient to establish prejudice. The court noted that the alibi witnesses interviewed by the defense investigator after Butler's conviction "could not provide any specific details about anything occurring at any particular or specific dates" and could "only provide generalities as to an alibi." Ultimately, the court concluded that the alibi witnesses' testimony would have been "weak" and would have "shown that there were at least three … days in which [Butler] was not incarcerated and … had the ability to commit the crimes against the children."

7

¶18    Butler now appeals, arguing that the circuit court erred by denying his postconviction motion without a hearing.

## DISCUSSION

¶19    A circuit court is not required to hold a hearing on every motion for postconviction relief. *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. If a postconviction motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief," then the court must hold a hearing. *Id.* "However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.* Whether a postconviction motion alleged sufficient facts to entitle the defendant to a hearing is a question of law that we review independently. *Id.*

¶20    In this case, Butler filed a postconviction motion seeking to withdraw his no-contest pleas based on the ineffective assistance of his trial attorney. A defendant seeking to withdraw a guilty or no-contest plea after sentencing must prove, by clear and convincing evidence, that a refusal to allow plea withdrawal would result in manifest injustice. *State v. Taylor*, 2013 WI 34, ¶¶24, 48, 347 Wis. 2d 30, 829 N.W.2d 482. One way that a defendant can establish manifest injustice is by showing that his or her trial attorney was constitutionally ineffective. *Id.*, ¶49.

¶21    To prevail on an ineffective assistance of counsel claim, a defendant must show both that his or her attorney performed deficiently and that counsel's deficient performance prejudiced the defense. *State v. Ortiz-Mondragon*, 2015 WI 73, ¶32, 364 Wis. 2d 1, 866 N.W.2d 717. To prove deficient performance, a

8

defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.*, ¶52. To establish prejudice in the context of a motion for plea withdrawal, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would not have entered a guilty or no-contest plea and "would have insisted on going to trial." *State v. Bentley*, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996) (citation omitted). If a defendant fails to establish one prong of the ineffective assistance analysis, a court need not address the other prong. *State v. Sanders*, 2018 WI 51, ¶30, 381 Wis. 2d 522, 912 N.W.2d 16.

¶22 Here, we conclude that the circuit court properly denied Butler's postconviction motion without a hearing because the record conclusively shows that Butler is not entitled to relief. Specifically, the record conclusively shows that Butler was not prejudiced by his trial attorney's alleged error.

¶23 Initially, we note that in his postconviction motion, Butler asserted that "but for trial counsel's failure to investigate his alibi defense, [Butler] would have insisted on going to trial." In his affidavit in support of the motion, Butler similarly averred that he "would have chosen to go to trial had [his] attorney investigated this alibi defense." Butler further averred that he "felt stuck" and "chose to follow through with the plea to reduced charges only because [his] attorney did not follow through with [his] request to investigate the alibi defense."

¶24 The record, however, belies these assertions. During the plea colloquy, Butler told the circuit court that his trial attorney had represented him competently, had answered all of his questions, had reviewed his case thoroughly, and had looked for any possible defenses. Butler also told the court that he was satisfied with his attorney's services and did not believe that those services were lacking in any way. In addition, Butler admitted during the plea colloquy that he

had committed the offenses in question on the dates alleged in the second amended Information. Thus, the record shows that Butler was aware of the dates at issue. According to Butler's postconviction motion, he was also aware of his possible alibi defense and was aware that counsel had allegedly failed to investigate that defense. If Butler believed at the time he entered his pleas that he had a viable defense to the charges, which his attorney had failed to investigate, then it was incumbent upon him to make the court aware of those facts. Butler's postconviction motion does not explain his failure to do so.

¶25 Notwithstanding the above, even if Butler had demonstrated that his counsel performed deficiently, the record conclusively shows that Butler was not prejudiced by his counsel's alleged failure to investigate the alibi defense, given the weakness of that defense and the substantial benefits that Butler received as a result of accepting the State's plea offer. Butler asserts that he could not have committed the crimes to which he pled because he was in custody during the entire charging period for Count 5 and during all but two or three days of the charging period for Count 2. Butler further asserts, based on his investigator's report, that three witnesses would have testified that Butler was at his uncle's residence—which was not the location where the crimes allegedly occurred—during the remaining two or three days when he was not in custody.

¶26 Butler's alibi defense presumes that the charging periods set forth in the second amended Information were correct and that, if Butler had gone to trial, the State's evidence would have shown that he assaulted the victims during those time periods. The record shows, however, that before Butler entered his no-contest pleas, there was significant uncertainty as to when the offenses actually occurred. Initially, the criminal complaint alleged that the offenses occurred between March 16, 2015, and June 13, 2015. The Information, however, listed the

10

date of each offense as January 1, 2015. Thereafter, the amended Information listed the charging periods for Counts 1, 2, and 3, respectively, as: September 1, 2015, through October 1, 2015; June 1, 2015, through July 30, 2015; and August 25, 2015, through October 1, 2015.

¶27 On the same day that the amended Information was filed, the State admitted during a motion hearing that the dates alleged in the Information did not "track the dates on the Criminal Complaint." The State further acknowledged that the amended Information again contained different dates. The State subsequently filed the second amended Information, which again changed the charging periods to: June 1, 2015, through July 30, 2015 (Counts 1 and 2); and August 25, 2015, through October 1, 2015 (Counts 3 and 5).

¶28 Regardless of these discrepancies in the charging documents regarding the relevant dates, it is undisputed that during her forensic interview, Mary stated that Butler had assaulted her "around Christmas" in "maybe 2015." The DOC printout attached to Butler's postconviction motion shows that he was in custody at Oshkosh Correctional Institution from November 13, 2015, until February 15, 2016. However, Mary did not definitively state that Butler had assaulted her around Christmas *in* 2015; she stated that he had assaulted her around Christmas in "maybe 2015." Thus, the fact that Butler was incarcerated in December 2015 does not show that he could not have assaulted Mary. Notably, neither the DOC printout nor the email from the Burnett County Sheriff's Office attached to Butler's postconviction motion shows that Butler was in custody during December 2014. Given Mary's age and the time that elapsed between the assaults and the date of Mary's forensic interview, it is understandable that Mary may have been unsure as to whether the assault in question occurred in 2014 or 2015.

11

¶29 It is also undisputed that Sara told a forensic interviewer that Butler had assaulted her during the school year, when there was no snow on the ground and it was warm outside. While that time period could have corresponded to the charging period for Counts 3 and 5 alleged in the second amended Information, it also could have corresponded to a different time period for which Butler did not have an alibi—for instance, the spring of 2015, or the spring or fall of 2014.[5]

¶30 The circuit court ruled that both girls' forensic interviews would be admissible at trial. Furthermore, the prosecutor indicated that he intended to play the interviews at trial. Accordingly, if Butler had chosen to go to trial, the jury would have heard the victims' own descriptions of when the offenses occurred—descriptions that did not necessarily align with the dates for which Butler had an alibi. Moreover, the court's pretrial rulings strongly indicate that the court would have permitted the State to amend the charging periods alleged in the second amended Information to conform to the evidence introduced at trial. Notably, the

---

[5] In his postconviction motion, Butler asserted—without any supporting citation—that he was "released from custody in March 2015." However, the documents attached to the postconviction motion do not support that assertion. The DOC printout shows that Butler was released from DOC custody on July 6, 2004, and was not returned to DOC custody until September 24, 2015. The email from the Burnett County Sheriff's Office states that Butler was in custody in the Burnett County Jail for 118 days during 2015—specifically, from June 3, 2015, to September 24, 2015, and from October 12, 2015, to October 15, 2015. Thus, the record does not support Butler's claim that he was released from custody in March 2015.

Furthermore, even if Butler was released from custody in March 2015, there is no information in the record as to how long he was in custody before his release. Thus, there is no information in the record to preclude a conclusion that Butler assaulted one or both girls earlier in 2015.

In addition, Butler's postconviction motion and the attached documents do not establish an alibi for the entire time period between March 2015 and June 3, 2015. Notably, none of the three witnesses who were interviewed by the defense investigator were able to state that Butler was at his uncle's residence for the *entire* time period between March 2015 and June 3, 2015, and never left his uncle's residence during that time.

court found that the victims' allegations were credible, even though they were not able to give "exact time[s]" when the assaults occurred, because "they were able to communicate their ages, where the assaults took place, what they were wearing, what the Defendant was wearing and at least the seasons of the years in which the assaults did allegedly take place." Thus, contrary to Butler's belief, his alibi defense would not actually have shown that he could not have committed the crimes charged.

¶31 Additionally, Butler received significant benefits under the plea agreement. His total sentencing exposure under the amended Information—the operative charging document before the parties reached their plea agreement—was 180 years of imprisonment. By accepting the State's plea offer, Butler reduced his total sentencing exposure to eighty years of imprisonment. He also secured the State's agreement to recommend "no additional incarceration time." We agree with the State that Butler "utterly fails to explain why he would have given up the substantial benefit of the plea agreement to face 100 additional years of incarceration exposure." Given the weakness of Butler's alibi defense, it is not reasonably probable that, absent his trial attorney's alleged error, Butler would have rejected the benefits that he received under the plea agreement and would have instead chosen to go to trial. *See **Bentley***, 201 Wis. 2d at 312.

¶32 For the reasons explained above, we conclude the record conclusively shows that Butler cannot establish the prejudice prong of his ineffective assistance claim. Accordingly, the circuit court properly denied Butler's postconviction motion without a hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.